UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 07-171-DLB

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA                                                            PLAINTIFF

VS.                                **MEMORANDUM OPINION AND ORDER**

JOHN A. REAM                                                                  DEFENDANT

* * * * *

## I.      Introduction

In its complaint, Plaintiff brings claims for indemnification, exoneration, and specific performance of a general indemnity agreement.  Currently ripe for the Court's consideration is Plaintiff's motion for summary judgment.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment (Doc. # 31) is **granted**.

## II.     Factual and Procedural Background

On October 31, 2005, three individuals[1], including Defendant John A. Ream, and one entity executed a "General Agreement of Indemnity" (Agreement) to induce Plaintiff Travelers Casualty and Surety Company of America ("Travelers") to execute $1.8 million in surety bonds on behalf of Industrial Machinery Services, LLC (IMS), as principal, in favor of TNT Freight Management, Inc. (TNT).  The surety bonds were required by TNT before

---

[1] Although the Agreement lists four individual indemnitors, one, Andrea Ream, did not sign the document.  Edward H. Lynch, Jr., Mildred L. Lynch, and John A. Ream all signed the Agreement as "individual" indemnitors, and Edward H. Lynch, Jr. also signed as an "entity" indemnitor on behalf of Industrial Machinery Services, LLC (as its President).  The Agreement provides for joint and several liability.

awarding IMS a subcontract in a "Project Logistics and Dismantle Contract."

The same day, IMS and Travelers completed the transaction by executing two bonds – a Subcontract Performance Bond A and a Subcontract Labor and Material Payment Bond – totaling $1.8 million, with Travelers as the surety in favor of TNT.  The Subcontract Performance Bond Form A specified that if the "Principal (IMS) shall promptly and faithfully perform said subcontract, then this obligation shall be null and void."  Similarly, the Subcontract Labor and Material Payment Bond provided that "if the Principal (IMS) shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use for the performance of the subcontract, then this obligation shall be void."

In summary, upon its execution, the Agreement imposed the following relevant legal consequences: (1) Travelers had insured IMS's subcontract performance; (2) Travelers had insured IMS's labor and materials payments to any claimant; (3) IMS had agreed to indemnify and exonerate Travelers for any payments made on its behalf, as specified in the Agreement; and (4) if IMS satisfied its obligations to TNT and claimants, Travelers would not be liable on IMS's behalf, and IMS would owe Travelers nothing.

Defendant Ream has admitted[2] that he did not send written notice of his intent or desire to terminate the Agreement, as permitted by Paragraph 14 thereof;[3] nor is there

---

[2] More specifically, Ream did not respond to a request for admission on this question, so it is deemed admitted.

[3] Paragraph 14 reads: "Termination: This is a continuing Agreement, which remains in full force and effect until terminated.  The sole method available to Indemnitors to terminate their participation in this Agreement is giving written notice sent by certified or registered mail to the Company of the Indemnitor's intent to terminate.  The termination shall take effect no earlier than 30 days after the Company receives such notice ("Termination Date").  The obligation and liability of the Indemnitors giving such notice shall be limited to Bonds furnished before the Termination Date."

2

evidence or suggestion that any of the other Indemnitors attempted to terminate the Agreement.  Thus, the Agreement has for all relevant times been in full effect.

On August 3, 2006, Travelers' attorney wrote to Indemnitors after it learned that IMS had sold all of its assets to Hilco Industrial, LLC.  Travelers had received payment bond claims totaling $537,244.21.  In its letter, Travelers demanded that Indemnitors deposit $1.5 million in collateral with Travelers to cover payment bond claims already submitted and those expected.  However, the letter did not indicate whether Travelers had already paid the bond claims.  That demand letter was sent pursuant to Paragraph 6 of the Agreement, which provided that –

> [Indemnitors] agree to pay the Company, upon demand, an amount sufficient to discharge any claim or demand made against the Company on any Bond. Indemnitors further agree to pay the Company, upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by Indemnitors.  These sums may be used by the Company to pay such claim or be held by the Company as collateral security against any loss, claim, liability or unpaid premium on any Bond.

The letter also reminded the Indemnitors that Paragraph 13 of the Agreement provided Travelers certain security interests: "As security, the Indemnitors hereby grant to Company a security interest in all of their equipment, machinery, vehicles, tools, and material, as well as sums due or to become due in connection with any Contract or other contract."

Paragraph 6 of the Agreement binds all Indemnitors to joint and several liability: "The Company is authorized to settle with any one or more of the Indemnitors individually, and without reference to the others and such settlement shall not bar or prejudice actions against or affect the liability of the others."

It is undisputed that Indemnitors did not meet Travelers' demand, leading to the instant lawsuit.  In its original complaint, Travelers requested Ream indemnify Travelers for

3

paid claims and related expenses, exonerate Travelers and provide security for the amount of claim notices, and specifically perform as required by the Agreement.  With leave of Court, Plaintiff amended its Complaint to add Edward and Mildred Lynch as Defendants. After filing their answers, the Lynch Defendants filed a suggestion of bankruptcy on October 1, 2008.  That filing stayed the proceeding against the Lynches, but did not otherwise impact the litigation against Defendant Ream (Doc. # 30).

In its pending motion, Travelers seeks summary judgment on Counts I (indemnification) and II (exoneration).  Plaintiff did not seek summary judgment on Count III (specific performance).  Without filing a response to the motion, Defendant Ream's counsel was permitted to withdraw from representation.  In that same Order, Defendant Ream was given deadlines to obtain new counsel and respond to Traveler's motion (Doc. #35).  Defendant Ream failed to comply with the Court's orders.  Based on these failures, the presiding magistrate judge ordered that the motion be submitted for decision without the benefit of a response from Defendant Ream.

In support of its motion, the record includes the affidavit of Alyssa Bergman, Associate Claim Counsel for Travelers, detailing payments made by Travelers on behalf of IMS in Travelers' legal capacity as surety for the Subcontract Performance Bond and the Subcontract Labor and Material Payment Bond, along with the expenses incurred investigating and litigating the claims.  In her affidavit, Bergman avers that by October 30, 2008, Travelers had expended (1) $435,000 in payment of the Subcontract Performance Bond; (2) $683,244.29 in payment of the Material Payment Bond; and (3) $95,576.66 in attorney's fees, mediation costs, and travel expenses.  In total, Travelers avers that it has lost $1,213,820.95 in connection with executing the Bonds, and argues it is entitled to

4

summary judgment in its claims versus Defendant Ream in that amount.

### III.    Analysis

#### A.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is not a genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence, and draw all reasonable inferences, in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce evidence showing that a genuine issue remains, *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

#### B.    Indemnification Claim

In reviewing Plaintiff's request for indemnification, the Court begins with the general principle that absent an ambiguity, a contract is to be enforced according to its terms. *See G.T. O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966) (in the absence

5

of an ambiguity, a written instrument will be enforced strictly according to its terms)  To determine whether "an ambiguity exists, the court must first determine that the contract provision is susceptible to inconsistent interpretations." *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. Ct. App. 1994).  Where the words are "plain," they will be given their "usual meaning." *G.T. O'Bryan*, 413 S.W.2d at 893.

These general principles of contract construction apply equally to indemnification agreements.  "The right of an indemnitee to recover of the indemnitor under a contract of indemnity according to the terms of such a contract is well recognized.  Such a contract is not against public policy and will be enforced if the indemnitee has suffered loss thereunder and has complied with its terms. *United States Fidelity & Guaranty Co. v. Napier Elec. & Constr. Co.*, 571 S.W.2d 644, 646 (Ky. Ct. App. 1978), *see also Quick Delivery of Kentucky, Inc., v. Payless Shoe Source, Inc.,* 2005 WL 3441360 (Ky. Ct. App.) (unpublished) and *Thompson v. The Budd Co.,* 199 F.3d 799, 807 (6th Cir. 1999) (holding that an indemnitor's liability "shall be determined by the provisions of the indemnity agreement itself").

In this case, Defendant Ream has admitted that he signed the General Agreement of Indemnity and has not challenged the Agreement's validity.  Nor has he argued that the Agreement's terms should be modified or nullified for any reason.  Finally, there is no evidence or suggestion that the Agreement is ambiguous or its terms are open to varying interpretations.  What is undisputed is that Travelers has performed its duties and made payment of over $1 million on claims made against the Bonds.  The Agreement's terms are clear and support granting Travelers summary judgment on its indemnification claim.

6

Despite Defendant Ream's failure to file a response to Traveler's Motion for Summary Judgment, the Court has reviewed the record to ensure that no genuine issues of material fact remain.  Upon conducting that review, and in view of applicable Kentucky case law, the Court concludes that summary judgment in favor of Travelers for its indemnification and exoneration claims against Defendant Ream is warranted.

1.   **Travelers is entitled to indemnity for payments made on claims against bonds**

Kentucky courts have recently considered the nuances of indemnity agreements in distinguishing indemnification from a guaranty of indebtedness.  More particularly, the Kentucky Court of Appeals stated that "[a] contract of indemnity is an obligation or duty requiring a promisor ... to make good any loss or damage which another has incurred while acting at the request or for the benefit of the promisor."  *Intercargo Ins. Co. v. B.W. Farrell, Inc.,* 89 S.W.3d 422, 426 (Ky. Ct. App. 2002).  The court identified a performance bond in the construction industry as a "prime example" of an indemnification agreement because it "creates a direct, *primary* liability between the promisor and the promisee that is original and independent of any other obligation."  *Id.* (emphasis in original).

The *Intercargo* court distinguished an indemnity agreement from a guaranty agreement where "the promisor protects his promisee from liability for a debt resulting from the failure of a third party to honor an obligation to that promisee – thus creating a secondary liability."  *Intercargo*, 89 S.W.3d at 426.  That court emphasized and explained that a true indemnity agreement is not subject to K.R.S. § 371.065.  That statute invalidates a "guaranty of indebtedness" unless it is written on, or expressly refers to, the instrument(s) being guaranteed or is "in writing signed by the guarantor and contains provisions

7

specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates. *Id.* at 425. The court further held that this statute used "instrument" to refer to documents extending credit, rather than performance bonds. *Id.* at 426.

Just as the agreement in *Intercargo*, the General Agreement of Indemnity in question here, by its express terms and substance, is one of indemnity, not guaranty, and as such is not governed by K.R.S. § 371.065. Additionally, as in *Intercargo*, the instrument guaranteed is a performance bond and not one extending credit. Therefore, K.R.S. § 371.065 is inapplicable.

Applying Kentucky law to facts analogous to those in the instant case, in *Lyndon Property Insurance Co. v. Overby Grain Farms, Inc.,* a federal court in the Western District of Kentucky recently awarded plaintiff insurance company summary judgment enforcing an indemnification agreement.[4] *Lyndon,* 2007 WL 1728263, at *1 (W.D. Ky.) (unpublished). In *Lyndon*, the insurance company paid a $100,000 claim on a surety bond on behalf of defendants. When defendants refused to indemnify the insurance company for payment made in good faith with the belief that defendants were liable, plaintiff sued.

As the indemnification in *Lyndon* was contractual – as opposed to implied – the court analyzed the agreement's terms. *Id.* at *2. Defendant contended that because the contract permitted it to request settlement before the plaintiff insurance company paid claims,

---

[4] In its motion for summary judgment, the *Lyndon* plaintiff argued that the motion is "ideally suited for determination on summary judgment" because it includes numerous financial items that are undisputed and can be tested by simple accounting. The question for disposition was relatively straightforward: Is the agreement valid and, if so, does it cover plaintiff's claims? These observations are also true of this action brought by Travelers.

plaintiff was required to notify defendant before paying claims. *Id.* at *3. The court held

that the contract did not imply a notification requirement before payment. *Id.* Finding the

contract clear and unambiguous, the court enforced the agreement according to its terms

and found defendants liable for the amount plaintiff insurance company paid in surety, plus

interest and attorney's fees. *Id.*

Just as the insurance company did in *Lyndon*, Travelers faithfully paid the claims

made on the surety bonds in good faith pursuant to its obligations under the Agreement.

Unlike the defendant in *Lyndon*, however, Defendant Ream has not suggested those

payments were improper. Also unlike *Lyndon*, Defendant Ream has not argued that the

Agreement required notification before Plaintiff paid any claim on surety bond. Additionally,

and as stated previously, Defendant Ream has not suggested the Agreement is open to

competing interpretations or that it implies any unwritten terms or requirements.

For these reasons, Travelers is entitled to summary judgment for indemnification

against Defendant Ream for payments of claims made against the bonds.

### 2.    Right to indemnity for attorney's fees and expenses

The *Lyndon* court also awarded plaintiff attorney's fees and expenses. *Lyndon*,

2007 WL 1728263 at *3. The agreement there provided that the indemnitor would

"reimburse the Company for all expenses, including reasonable attorney's fees, which the

Company may incur." *Id.* at *1. In so concluding, the court used the same rationale to

award attorney's fees as it did to require the indemnitor to indemnify the company for

payment of claims made against the bond. Because the agreement was contractual and

its terms were clear and unambiguous, the court enforced the terms of the agreement.

Just as in *Lyndon*, the terms of the Agreement here are clear.  At Paragraph 4, the Agreement reads:

> The Indemnitors shall exonerate, indemnify and save the Company harmless from and against every claim, loss, damage, demand, liability, cost, charge, Bond premium, suit, judgment, *attorney's fee*, and expense which the Company incurs in consequence of having obligations in connection with such Bonds.  Expense includes but is not limited to: the cost incurred by reason of making any investigation in connection herewith; the cost of procuring or attempting to procure release from liability including the defense of any action brought in connection herewith and *the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors*.

(emphasis added).  Like *Lyndon*, the Agreement here expressly provides that attorney's fees will be indemnified.  Unlike *Lyndon*, however, the Agreement contemplates, and expressly includes, the expense to investigate and bring an action to enforce the Agreement.  That is, the Agreement not only provides for attorney's fees generally, but also for the precise purpose Travelers has incurred the fees and now requests indemnification.

In its motion, Travelers suggests that attorney's fees are appropriate even where the indemnification agreement does not expressly include attorney's fees and expenses.  In *Fidelity & Casualty Co. of New York v. Mauney*, 116 S.W.2d 960 (Ky. 1938) the agreement permitted the indemnitee to recover "costs, charges, or expenses" that were "in consequence" of the Bond. *Id.* at 961.  Finding that attorney's fees qualified as "costs, charges, or expenses," the court held the indemnitor liable. *Id.* at 962.  Like *Fidelity,* the Agreement at issue provides for payment of costs, charges, and expenses (among other things) that arise "in consequence" of the Bonds.  Under *Fidelity*, this includes attorney's fees, even were it necessary to rely upon more general and overarching phrases pursuant to *Fidelity*, rather than the Agreement's express provision here for attorney's fees.

10

Upon review, Kentucky case law permits awarding legal fees when required by the terms of an unambiguous, validly executed indemnity agreement. *Fidelity* held that an indemnity agreement could implicitly provide for attorney's fees and an indemnitor would be liable for such expenses.

In this case, the Agreement expressly requires indemnification of attorney's fees. The *Lyndon* court required indemnification of attorney's fees and expenses when required by the contract. The Agreement herein not only expressly requires indemnification of attorney's fees and expenses, generally, but also provides a non-exhaustive list of when attorney's fees are appropriate. That list includes investigation and litigation necessary to enforce the indemnification Agreement. For all these reasons, Travelers' motion for summary judgment requesting indemnification of attorney's fees and expenses is granted.

### 3. Indemnification amounts

Paragraph 5 of the Agreement provides:

Claim Settlement: The Company shall have the right, in its sole discretion, to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such Bond shall be paid, compromised, settled, defended or appealed, and its determination shall be final, binding and conclusive upon Indemnitors. An itemized, sworn, statement by an employee of the Company or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of Indemnitor's liability.

In compliance with this provision, Travelers submitted the affidavit of Alyssa Bergman. That affidavit, filed as part of Doc. # 38, sets forth the amounts paid by Travelers in this case, and qualifies as an itemized and sworn statement of an employee of the Company. Pursuant to the Agreement's terms, her affidavit is taken as prima facie evidence of the propriety and existence of Defendant Ream's liability. Defendant Ream has not disputed

11

this prima facie evidence.

Although Defendant Ream has not disputed this evidence, before awarding the amount alleged by Plaintiff's calculations, Kentucky law requires the Court to determine if the indemnitee acted in good faith in discharging its bond obligations and incurring related expenses.   The court in *Fidelity* affirmed this principle, holding that it "would seem unnecessary to say that under such a contract of indemnity the indemnitee must act reasonably and in good faith and with due diligence."  *Fidelity*, 116 S.W. 2d at 962.

Similarly, in *National Surety Corp. v. Peoples Mining Co., Inc.*, 57 F. Supp. 281 (W.D. Ky. 1944) the indemnitor refused to indemnify the surety corporation, contending the corporation had paid an invalid claim.  The court distinguished between an actually invalid claim and one which the indemnitor claims to be invalid or claims to have a defense thereto.  "If the surety or the indemnitee has the legal right to adjust or settle the claim, either by reason of the terms of his contract or because of actions on the part of the indemnitor, it is only necessary that such an adjustment or settlement be a reasonable one and made in good faith."  *Id.* at 282-83.

In *United States Fidelity & Guaranty Co. v. Napier Electric & Construction Co.*, 571 S.W. 2d 644 (Ky. Ct. App. 1978), the court determined that where an agreement permits the indemnitee to recover for all payments "in good faith under the belief that surety was or might be liable for said payments or that said payments are necessary and advisable to protect the surety's right or to avoid and lessen the surety's liability," only a pleading and proving of fraud or lack of good faith will save the indemnitor from liability.  *Napier,* 571

S.W.2d at 646.[5] The indemnitor in *Napier* failed to show indemnitee acted without good faith and, consequently, was held liable.

In this case, Travelers has provided prima facie evidence that all payments made were proper and consistent with the Agreement's terms. Moreover, Defendant Ream has not disputed either the payment or amount of any claim settled, or suggested any payment was made fraudulently or without good faith. Accordingly, Defendant Ream shall indemnify Travelers pursuant to the Agreement's terms, in the amounts calculated and recorded in Alyssa Bergman's affidavit, to wit, $435,000 for payments made on claims against the Subcontract Performance Bond, and $683,244.29 for payments made on claims against the Subcontract Labor & Material Payment Bond, for a total of $1,118,244.29.

### 4.    Attorney's fees and expenses

The court's broad discretion in awarding the attorney's fees and expenses pursuant to an indemnification agreement was articulated in *United States v. Hardy*, 916 F. Supp. 1385 (W.D. Ky. 1996). There, the court first established indemnitor's liability for attorneys fees[6] then made a separate determination of the "reasonable and necessary" fees and costs; it did so based on evidence from an expert witness who multiplied the reasonable amount of hours to do the legal work by the hourly market rate. *Id.* at 1391-92. The court

---

[5]  The agreement in *Napier,* similar to the Agreement in the case at bar, provided that vouchers, other evidence of payments, or "an itemized statement of payments sworn to by an officer of the surety shall be prima facie evidence of the fact and extent of the liability of the indemnitor to the surety." 571 S.W.2d at 646. There the indemnitee presented "proper evidence pursuant to the agreement of all payments made" and was indemnified. *Id.*

[6]  It appears that attorney's fees were awarded pursuant to a broad indemnification agreement for "any and all loss, damage, injury ... resulting directly or indirectly," rather than pursuant to an express agreement to indemnify for attorney's fees and expenses. *United States v. Hardy,* 916 F. Supp. at 1391. However, the court in *Hardy* did not specifically identify under what agreement terms it found indemnitor liable for attorney's fees.

13

then reduced the total by half based on equitable considerations. *Id.* at 1392 (citing *Chittum v. Abell*, 485 S.W.2d 231, 237 (Ky. 1972)).  The *Hardy* court affirmed the same award upon reconsideration, but explained that it did so because certain costs – an amicus brief drafted for a different case and an $80,000 computer support system for data analysis, for example – were unreasonable and the law firm was unable to account for many of the fees.  *Id.*

In its pending motion, Travelers claims it has expended $95,576.66 in attorney's fees, mediation costs, and travel expenses.  Defendant Ream's breach of the Agreement left Travelers no choice but to pursue indemnification through this lawsuit.  Defendant Ream has not challenged the amounts or reasonableness of those amounts.  The Court concludes that the $95,576.66 in attorney's fees, mediation costs, and travel expenses is reasonable under the facts and circumstances of this case.

### C.   Exoneration Claim

As discussed herein, a validly executed indemnification agreement's clear and unambiguous terms will be enforced pursuant to their plain meaning.  Paragraph 4 of the Agreement provides:

> Indemnification and Hold Harmless: The Indemnitors shall *exonerate*, indemnify and save the Company harmless from and against every claim, loss, damage, demand, liability, cost, charge, Bond premium, suit, judgment, attorney's fee, and expense which the Company incurs in consequence of having obligations in connection with such Bonds.

(emphasis added).   Travelers argues that Alyssa Bergman's affidavit itemizing the expenses incurred satisfies the Agreement's prerequisite for exoneration.  As such, Plaintiff Travelers requests the court grant summary judgment and require Defendant Ream to exonerate it.

14

In considering Travelers' motion, the Court starts under the premise that there is very little Kentucky law defining the scope and nature of the legal concept of exoneration. The Restatement (Third) explains that exoneration arises where there is a surety relationship. Where there is such a relationship and the principal breaches his duty to perform, requiring the secondary obligor to perform, the secondary obligor is entitled to appropriate relief protecting its interests; this right to relief is exoneration. *Restatement (Third) § 21: Principal Obligor's Duty of Performance*, Comment (i).

In this case, the secondary obligor, Travelers, is entitled to this right to relief, in addition to indemnification, as provided in Paragraph 4 of the Agreement: "The Indemnitors shall *exonerate*, indemnify, *and* save the Company harmless…" (emphasis added). Though the Restatement rule cited above relates to a common law right to exoneration, the Restatement also contemplates a contractual right, where both parties agree to such a provision: "The principal obligor's duties pursuant to this section may be modified or displaced by contract between the principal obligor and the secondary obligor." *Id.* at Comment (b) (citing § 6). In addition to the common law right, the parties contracted in this case to a contractual right to exoneration. Accordingly, Travelers is entitled to summary judgment on its claim for exoneration.

However, because the record is devoid (other than Ms. Bergman's affidavit) of any precise monetary amounts Travelers believes it is entitled to recover via its exoneration claim, the Court needs further information before it considers awarding any additional monetary amount on that claim. While Travelers is legally and contractually entitled to exoneration, under the current state of the record, the Court cannot determine the appropriate relief for that claim. If Travelers seeks an additional recovery on its exoneration

15

claim, it shall provide the Court with supplemental information filed within ten days.  In that same notice, Travelers shall comment on whether it plans on continuing to pursue its claims for specific performance as alleged in Count III, or if that claim has been made moot by way of the granting of summary judgment on the other two claims.

### IV.    Conclusion

Therefore, for the reasons stated herein, **IT IS ORDERED** as follows:

1.    Travelers' Motion for Summary Judgment (Doc. # 31) be, and is hereby **GRANTED**.  Travelers is awarded a Judgment against Defendant John A. Ream in the amount of $1,213,820.95;

2.  If Travelers seeks an additional recovery on its exoneration claim, it shall provide the Court with supplemental information **within ten (10) days**.  In that same filing, Travelers shall comment on whether it plans on continuing to pursue its claims for specific performance against Defendant Ream as alleged in Count III, or if that claim is now moot.

This 9th day of September, 2009.



Signed By:

*David L. Bunning*

**United States District Judge**

G:\DATA\Opinions\2-07-171-Memorandum-Order-Granting-MSJ.wpd